In re MARINE POLLUTION SERVICE, INC., T/A Certified Concrete Co., and Transit Mix Concrete Corp., Debtor.

David M. BRODSKY, as Trustee for Marine Pollution Service, Inc., t/a Certified Concrete Co., and Transit Mix Concrete Corp., Plaintiff,

v.

LOCAL 282, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA; Certified Concrete Co. Drivers Committee of Local 282; Transit Mix Concrete Corp. Drivers Committee of Local 282; William Michael Meyers; and Thomas A. Knowlton, Esq., Defendants,

Certified Concrete Co. Drivers Committee of Local 282, Defendant–Appellant,

Transit Mix Concrete Corp. Drivers Committee of Local 282 and William Michael Meyers, Defendants–Appellees.

No. 1678, Docket 88–5032.

United States Court of Appeals, Second Circuit.

Argued Aug. 16, 1988.

Decided Sept. 21, 1988.

Stephen L. Fine, New York City (Marylin Gelfand Diamond, Ann Weinfeld Schulman, Cohn, Glickstein & Lurie, of counsel), for defendant-appellant.

Walter M. Meginniss, Jr., Brooklyn, N.Y. (Martin Garfinkel, Kent Y. Hirozawa, Gladstein, Reif & Meginniss, of counsel), for defendants-appellees.

Before WINTER and MINER, Circuit Judges, and BILLINGS *, District Judge.

MINER, Circuit Judge:

Certified Concrete Co. Drivers Committee of Local 282 (the "Certified Drivers Committee" or "CDC") appeals from an order of the United States District Court for the Southern District of New York (Mukasey, J.), reversing an order of the United States Bankruptcy Court (Blackshear, J.) that vacated an arbitrator's award in favor of Transit Mix Concrete Corp. Drivers Committee of Local 282 (the "Transit Mix Drivers Committee" or "TMDC"). The award directed Certified Concrete Co. ("Certified") to combine its employee list with that of Transit Mix Concrete Corp. ("Transit Mix").

David Brodsky, as trustee in bankruptcy for both Certified and Transit Mix, originally commenced this action in bankruptcy court to challenge the arbitrator's award. Although named as defendant, CDC supported the trustee's position. The bankruptcy court vacated the award and TMDC appealed. The district court reversed, 88 B.R. 588 (S.D.N.Y.1988), finding that the award was a proper exercise of the arbitrator's powers under the Certified contract. On this appeal, the Certified Drivers Committee claims that the district court erred in reinstating the arbitrator's award. CDC argues that the arbitrator's award fails to "draw its essence" from the contract, *see* *United Steelworkers v. Enterprise Wheel*

* Hon. Franklin S. Billings, Jr., U.S. District Judge for the District of Vermont, sitting by designation.

*& Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). For the reasons that follow, we agree, and we reverse the order of the district court.

## BACKGROUND

Transit Mix and Certified are commonly-owned manufacturers and distributors of ready-mix concrete. Each is party to an identical collective bargaining agreement with Local 282 of the International Brotherhood of Teamsters ("Local 282" or the "union"), the collective bargaining representative of the drivers employed by Transit Mix and Certified.

Each contract (the "Certified contract" and the "Transit Mix contract") sets forth the rights and obligations of the employer with respect to its employees, and each includes a section governing seniority, Section 9, which provides in pertinent part: "When the Company is a 'buyout' the men go to the bottom of the list. In a 'merger,' the men are to be slotted." Joint App. at 57. The contracts also provide for creation of a "Disputes Panel," empowered to resolve disputes between the parties. The panel has jurisdiction to hear

[a]ny and all complaints, grievances, controversies or disputes between the Union and the Employer in connection with or in relation to this Agreement or concerning the interpretation, application, performance or alleged breach thereof by either of the parties hereto, or by any other party signatory to this industry-wide collective bargaining Agreement.

*Id.* at 68. In the event that the panel cannot reach a decision, the issue may be submitted to arbitration. *See id.* at 69. The arbitrator is granted the same jurisdiction as the panel and has the same powers to "grant mandatory and injunctive relief, damages, and such other relief" as is appropriate. *Id.*

The instant dispute concerns an arbitrator's award issued in response to a grievance filed by Transit Mix's drivers claiming positions on Certified's roster, a dispute occasioned by the failing fortunes of Tran-

sit Mix. On August 7, 1987, Certified filed a petition for reorganization under Chapter 11 of the U.S. Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* (1982 & Supp. IV 1986). On or about August 12, 1987, Transit Mix suspended its operations, and, on August 21, 1987, it filed a Chapter 11 petition also. The bankruptcy court consolidated the Transit Mix and Certified petitions for procedural purposes only and appointed an operating trustee, David Brodsky, to manage the estates of both debtors.

Upon suspending its operations, Transit Mix laid off its employees. Certified, however, continued operating in Chapter 11. After Transit Mix suspended business, Certified began using Transit Mix employees to fill its needs on a daily basis, once it had exhausted its own roster.

The Transit Mix drivers complained to their union that under Section 9 of the Certified contract they should be "slotted" into the Certified roster, because a "merger" of Transit Mix and Certified had taken place. In response, the union maintained neutrality but, by letter dated August 28, 1987, demanded arbitration with Certified. In the August 28th letter, counsel for the union, Franklin Moss, stated: "I am writing with respect to a grievance that has arisen pursuant to the collective bargaining agreement between Local 282 and Certified Concrete Co." Joint App. at 84. The letter noted the opposite positions of the Transit Mix drivers and the Certified drivers and the union's belief "that the drivers are entitled to a determination by an impartial arbitrator with respect to this matter," *id.* Moss also expressed his understanding that Certified and the union had agreed to bypass the Disputes Panel and submit the issue directly to arbitration, *id.* at 84–85.

Certified agreed to the union's demand, an arbitrator was chosen and the arbitration proceeding was scheduled. The union appointed two committees—TMDC and CDC—to represent the interests of the employees. Brodsky, representing Certified, participated in the proceeding. After extensive hearings, the arbitrator issued an award in favor of the Transit Mix drivers. In his written opinion, the arbitrator noted that: "There are two groups of employees: (1) Members of a bargaining unit under contract between the Union and Certified Concrete Company; and (2) Members of a bargaining unit under contract between the Union and Transit–Mix." Joint App. at 86 (Arbitrator's Opinion and Award). He recognized that "[t]here [is] in the two separate contracts some identical language which deals with 'Seniority' (Section 9) and 'Successors' (Section 2[8])," *id.* at 90.

The arbitrator, however, did not look to these contractual clauses or arbitral precedent to decide the issue before him. Instead, finding that "there is general agreement that there is *no* language in either the contract or in an arbitrator's decision which explicitly states the proper solution," *id.* at 91, he concluded that "there is neither a 'buy-out' nor a 'merger'," *id.* at 94, and "therefore no contractual precedent as a guide," *id.* Nevertheless, the arbitrator relied upon the "general proposition" that "the contractual recognition of 'seniority' creates a very substantial value to the individual bargaining unit members," *id.*, and concluded that the Certified drivers should be compelled to "share" their job opportunities with the grievants.

In fashioning a remedy, the arbitrator drew upon what he regarded as his *"carte blanche* in determining the award in this case," *id.* at 95. Consequently, based on his "guiding principle of equity," *id.*, he eschewed the remedies provided in Section 9. The Transit Mix drivers were not "slotted" into the Certified roster, but instead, a new roster, drawing alternately from each employer's list, was established.

*The Bankruptcy Court Proceeding*

Brodsky, as trustee for Certified, commenced an action in the bankruptcy court against Local 282, the drivers committees, William Michael Meyers (a member of the Transit Mix Drivers Committee) and Thomas Knowlton, the arbitrator. The trustee sought a declaratory judgment and injunctive relief to vacate the arbitration award. Though named as a defendant, CDC submitted a petition to vacate the award. The CDC petition included a claim against Local 282 for breach of its duty of fair representation.

By order dated November 13, 1987, the bankruptcy court temporarily enjoined the effective date of the arbitrator's award. Four days later, a preliminary injunction was granted, staying implementation of the award. On December 16, 1987, Judge Blackshear vacated the arbitrator's award.

The bankruptcy judge found that the arbitrator's award was infirm because, *inter alia*, it was an award to Transit Mix drivers under the Certified contract. Judge Blackshear held that the Transit Mix drivers could have pursued a claim under the Certified contract if a merger or buy-out had occurred, but the arbitrator's factual findings foreclosed that conclusion. Furthermore, the record could not support a finding that the Transit Mix drivers were third-party beneficiaries of the agreement between Certified and Local 282. Thus, Judge Blackshear concluded, the arbitrator "proceeded to fashion a remedy in search of a grievance." Joint App. at 346. Because it failed to draw its essence from the contract, the award was vacated.

*The District Court Proceeding*

TMDC and Meyers appealed Judge Blackshear's decision to the district court pursuant to 28 U.S.C. § 158(a) (Supp. IV 1986). Judge Mukasey reversed Judge Blackshear and reinstated the arbitrator's award. He determined that the award was based on a reasonable reading of the Certified contract. Recognizing that courts traditionally have accorded arbitration awards substantial deference, the district court found that the arbitrator was well within his authority in finding for TMDC. He rejected the appellees' argument that the August 28, 1987 arbitration demand presented the narrow issue whether a "merger" or "buy-out" had occurred under the Certified contract, finding that such a narrow reading was unreasonable, and that, in any event, the court was "bound to resolve any doubts about the scope of the submission to the arbitrator in favor of coverage." Joint App. at 373 (citing *Kurt Orban Co. v. Angeles Metal Systems*, 573 F.2d 739 (2d Cir.1978)).

On appeal to this Court, the parties raise many of the same arguments with respect to the merits of the arbitrator's decision urged throughout this action. We hold that the arbitrator's award under the Certified contract inuring to the benefit of Transit Mix drivers did not draw its essence from the Certified contract and, accordingly, we reverse the order of the district court.

## DISCUSSION

Since "arbitration is a matter of contract," *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960), an arbitrator's award must "draw[ ] its essence from the collective bargaining agreement," and the arbitrator is not free merely to "dispense his own brand of industrial justice," *Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361; *see United Paperworkers Int'l Union v. Misco, Inc.*, — U.S. —, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award," *Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361.

An arbitrator's decision is entitled to substantial deference, and the arbitrator need only explicate his reasoning under the contract "in terms that offer even a barely colorable justification for the outcome reached" in order to withstand judicial scrutiny, *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir.1978). Nevertheless, "[t]his is not to say that simply by making the right noises—noises of contract interpretation—an arbitrator can shield from judicial correction an outlandish disposition of a grievance," *Ethyl Corp. v. United Steelworkers*, 768 F.2d 180, 187 (7th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986). When it is clear that the arbitrator "*must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference, either ...)," *id.* at 184–85, the arbitrator has failed to draw the award from the essence of the collective bargaining agreement.

In the instant case, the arbitrator breached his responsibility to the parties by importing his notions of equity into the arbitration proceeding. His award was drawn not from the contract but from his concern that the Transit Mix drivers be allowed some opportunity for employment while their own employer restructured its operations.

### Express Terms of the Certified Contract

To resolve the dispute between TMDC and Certified, the arbitrator had to determine what rights the Transit Mix drivers had under the Certified contract. Under the express terms of that contract, Certified is obligated contractually to the union, and implicitly, to its own employees. The Transit Mix drivers derive their contractual rights from a different contract between the union and Transit Mix. Thus, Certified is obligated under Section 9 to ensure that, if Certified is bought out or merged, *its* employees are accorded proper treatment, and it is bound to arbitrate that issue with the union in the event of a dispute. Transit Mix has a similar obligation to its employees, and that obligation is enforceable by the union in arbitration *against Transit Mix*. Under Section 28 of each contract, these obligations are enforceable against the employer's "successor." Therefore, the Transit Mix drivers' rights under section 9 were enforceable against Certified only if Certified were deemed the "successor" of Transit Mix.

The arbitrator rejected this resolution of the controversy. He concluded that no merger or buy-out, nor any de facto corporate combination of the two employers, had occurred. We agree with that conclusion. The record is replete with evidence that, at the time that TMDC claimed the right to arbitration with Certified, the Transit Mix drivers were employees only of Transit Mix. Brodsky testified before the bankruptcy court that, despite common ownership, the companies always had functioned as separate entities. Joint App. at 157. Consolidation of the Chapter 11 petitions of the two entities was procedural, not substantive, and thus was of no consequence in establishing an interrelationship between the two employers. Although Transit Mix had suspended its business, the trustee was pursuing actively a plan to recommence its operations. While Local 282 stated in its arbitration demand that the Transit Mix employees had been appended to the bottom of the Certified roster, this assertion was unfounded. Once Transit Mix suspended operations, the Transit Mix employees made themselves available to Certified on an ad hoc, as needed, basis. *Id.* at 156–57 (Bankruptcy Court Testimony of Trustee David Brodsky). They remained Transit Mix employees, however, throughout this period.

In his decision, the arbitrator stressed the temporary nature of the problem before him: "[T]he Trustee has recently indicated to creditors and the Union that his efforts to resume Transit–Mix operations may indeed prove fruitful in the next few weeks," *id.* at 92. The arbitrator noted that CDC objected to a merger of rosters on the grounds that "at some time in the future there might well be serious questions as to the identity of individuals who are entitled to employment by the 'new' Transit–Mix," *id.* at 93. He also observed that, by consolidating the lists, "it would be somewhat unfair that [the Transit Mix] drivers should benefit by a temporary increase in their employment at the expense of the Certified list and, *with the possible reactivation of Transit–Mix, be free to return to that employment,*" *id.* at 95 (emphasis added). Therefore, he concluded that a temporary solution was required: "Clearly any outcome of this case should properly indicate that the duration of the award is intended only for such period as Transit–Mix remains out of business as an employer of concrete drivers," *id.* at 93. Thus, the arbitrator obviously was aware that the Transit Mix drivers remained hopeful that their employer would resume operations, and that they expected their places on the Transit Mix roster to be preserved.

### Implied Certified Contract Terms

Despite the arbitrator's finding that no merger, buy-out or other de facto combina-

tion took place, and, consequently, that the express terms of the Certified contract offered no solution to the instant dispute, TMDC urges us to conclude that the arbitrator's award draws its essence from the Certified contract. It claims that the award is based on implied Certified contract terms inuring to the benefit of the Transit Mix drivers. Certainly, as TMDC observes, the arbitrator was empowered to discover implied terms in the Certified contract, *see Ethyl Corp.*, 768 F.2d at 186 (arbitrator may imply terms and fill gaps left by parties in absence of a "no modification" clause in agreement). TMDC notes that the power to imply terms has been extended to infer contractual rights in favor of non-parties to an agreement, *see, e.g., Syufy Enters. v. Northern California State Ass'n of IATSE Locals*, 631 F.2d 124, 126 (9th Cir.1980), *cert. denied*, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981).

We recognize that had the arbitrator implied a contract term, his action would not have been unprecedented. However, we find nothing in the arbitrator's decision to support even a "barely colorable" inference that he did so. In *Syufy*, the arbitrator's award was supported by the parties' bargaining history. In the instant case, the arbitrator never mentioned the bargaining history of the parties, the custom in the industry nor the common ownership of Certified and Transit Mix in making his determination. In fact, the arbitrator never explicated his reasons under the contract for concluding that Certified was obligated to the Transit Mix drivers.

TMDC asserts that the arbitrator implied a Certified contract term that recognized the seniority rights of Transit Mix drivers when he invoked the "general proposition" that "contractual recognition of 'seniority' creates a very substantial value to the individual bargaining unit members," Joint App. at 94. We disagree. Though the arbitrator found that, generally, "property rights ... are implicit in the contractual recognition of seniority," *id.* at 93, he did not purport to base his award on any express or implied term in the collective bargaining agreement. Instead, he reacted to "[t]he practical effect of appending the Transit–Mix employees to the bottom of the Certified list," which was "to deny them any present realistic expectation of employment by Certified," *id.* Observing that his choice was between abolishing the Transit Mix drivers' rights and ordering that job opportunities be "shared in some proper manner," *id.*, the arbitrator chose to require "sharing based on [his] concern for equity," *id.* at 95.

In light of the foregoing, we are led ineluctably to the conclusion that the arbitrator exacted his "own brand of industrial justice," *Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361, and, therefore, we have "no choice but to refuse enforcement of the award," *id.*

### CONCLUSION

Based on the foregoing, the district court's order is reversed.