07-0828-cv
ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Argued:  July 7, 2008                       Decided: April 9, 2009)

Docket No. 07-0828-cv

RELIASTAR LIFE INSURANCE COMPANY OF NEW YORK,

*Petitioner-Appellant*,

—v.—

EMC NATIONAL LIFE COMPANY,
also known as National Travelers Life Company,

*Respondent-Appellee*.

Before:

POOLER, RAGGI, *Circuit Judges,* and TRAGER, *District Judge.*[1]

Appeal from a judgment of the United States District Court for the Southern District

of New York (Kaplan, J.), vacating a portion of an arbitration award on the ground that the

arbitration panel exceeded its authority in awarding attorney's and arbitrator's fees as a

---

[1] The Honorable David G. Trager of the United States District Court for the Eastern District of New York, sitting by designation.

1

sanction for a party's failure to arbitrate in good faith in light of a clause in the arbitration agreement requiring each party to bear its own attorney's and arbitrator's fees.

REVERSED IN PART AND REMANDED.

Judge Pooler dissents in a separate opinion.

———————

PIETER VAN TOL, Lovells, New York, New York (Gail M. Goering and John M. O'Bryan, Lovells, Chicago, Illinois, *on the brief*), *for* Petitioner-Appellant.

JOHN M. NONNA, LeBoeuf, Lamb, Greene & MacRae, LLP, New York, New York (Richard J. Cairns, LeBoeuf, Lamb, Greene & MacRae, LLP; Denny M. Dennis, Todd A. Strother, and Michael L. Mock, Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, Iowa, *on the brief*), *for* Respondent-Appellee.

———————

REENA RAGGI, *Circuit Judge*:

On this appeal, we consider whether parties' inclusion in an arbitration agreement of a general statement that each will bear the expenses of its own arbitrator and its own attorneys deprives the arbitration panel of authority to award such expenses as a sanction against a party whom the panel determines failed to arbitrate in good faith. We conclude that it does not and, accordingly, reverse the judgment of the United States District Court for the Southern District of New York (Lewis A. Kaplan, Judge), entered on February 14, 2007, insofar as it vacated that part of an arbitration award requiring respondent EMC National Life Company ("EMC"), successor in interest to National Travelers Life Company

2

("National Travelers"), to pay such fees to petitioner ReliaStar Life Insurance Co. of New York ("ReliaStar"). We remand the case so that the district court may enter a new judgment confirming the arbitration award in all respects.

## I.     Factual Background

### A.     The Agreement to Arbitrate

In December 1997, National Travelers and ReliaStar entered into two separate but related coinsurance agreements, one pertaining to certain ReliaStar insurance policies in force as of January 1, 1998, and the other pertaining to certain ReliaStar policies to be issued on or after that date. Because the agreements have identical terms and conditions, for purposes of this appeal we refer to them collectively as the "Coinsurance Agreements."

Article X of the Coinsurance Agreements governed the parties' agreement to arbitrate. It reads in relevant part as follows:

> 10.1 Appointment of Arbitrators. In the event of any disputes or differences arising hereafter between the parties with reference to any transaction under or relating in any way to this Agreement as to which agreement between the parties hereto cannot be reached, the same shall be decided by arbitration. Three arbitrators shall decide any dispute or difference . . . .

> 10.2 Decision. The arbitrators shall consider customary and standard practices in the life or health reinsurance business, as applicable to the dispute. They shall decide by a majority vote of the arbitrators. There shall be no appeal from their written decision. Judgment may be entered on the decision of the arbitrators by any court having jurisdiction.

> 10.3 Expenses of Arbitration. Each party shall bear the expense of its own arbitrator (whether selected by that party, or by the other party pursuant to the procedures set out in Section 10.1) and related outside attorneys' fees, and

3

shall jointly and equally bear with the other party the expenses of the third arbitrator.

10.4 Applicable Law. Any arbitration instituted pursuant to this Article shall be held in New York, New York, or another site mutually agreed upon by the parties and the laws of the State of New York and to the extent applicable, the Federal Arbitration Act, shall govern the interpretation and application of this Agreement.

The particular focus of this appeal is section 10.3.

B.       The Arbitration Award

When various disputes arose between the co-insurers, National Travelers initiated arbitration proceedings seeking (1) a declaration that the Coinsurance Agreements had been terminated and (2) approval for a proposed terminal accounting. ReliaStar opposed both National Travelers' claim of termination and its proposed method for conducting a terminal accounting.

Following discovery, in May 2006, an arbitration panel conducted a two-week hearing. On August 4, 2006, the panel entered an interim award, finding that the Coinsurance Agreements remained in force between the parties and directing National Travelers to pay Reliastar more than $21 million past due under that agreement. The panel directed the parties to meet to resolve issues related to the resumption of their relationship under the Coinsurance Agreements. Further, in paragraph 6 of the award, a majority of the panel, without explanation, awarded ReliaStar attorney's and arbitrator's fees and costs.

The parties complied with all aspects of the award, except for that part granting

4

ReliaStar fees and costs, which they agreed National Travelers could submit for reconsideration to the panel and, if necessary, challenge in court. After further briefing on the issue of fees and costs, the arbitration panel entered a final award on October 20, 2006. A majority of the panel awarded ReliaStar fees for its attorneys and arbitrator in the amount of $3,169,496, costs of $691,903.75, as well as interest, explaining that it viewed the conduct of National Travelers in the arbitration "as lacking good faith."

    C.    The District Court Proceedings

On October 20, 2006, ReliaStar petitioned the district court to confirm the final arbitration award, and on November 2, 2006, National Travelers filed a counter-petition to vacate the award to the extent it granted ReliaStar fees and costs. National Travelers argued that the arbitration panel had exceeded its authority in awarding fees and costs in light of section 10.3 of the Coinsurance Agreements, which obligates each party to "bear the expense of its own arbitrator . . . and related outside attorneys' fees." The district court agreed and, accordingly, vacated that part of the final award requiring National Travelers to pay Reliastar's attorney's and arbitrator's fees before confirming it in all other respects.

ReliaStar appeals the vacatur.

## II.    Discussion

    A.    Standard of Review

In considering a challenge to a district court's decision to vacate a portion of an arbitration award, we review its legal rulings de novo and its findings of fact for clear error.

5

See Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 260 (2d Cir. 2003).

The law is clear that because arbitration is "a matter of contract[,] . . . a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." PayneWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996). The scope of an arbitrator's authority thus "generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission." Synergy Gas Co. v. Sasso, 853 F.2d 59, 63-64 (2d Cir. 1988) (internal quotation marks omitted). Section 10(a)(4) of the Federal Arbitration Act allows courts to vacate an arbitral award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). We have, however, "consistently accorded the narrowest of readings" to this provision of law, Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d at 262 (internal quotation marks omitted), in order to facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation, see, e.g., Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805, 808 (2d Cir. 1960) ("[T]he court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated.").

Thus, in considering a section 10(b)(4) challenge, "[t]he principal question for the reviewing court is whether the arbitrator's award draws its essence" from the agreement to arbitrate, "since the arbitrator is not free merely to dispense his own brand of industrial

6

justice." 187 Concourse Assocs. v. Fishman, 399 F.3d 524, 527 (2d Cir. 2005) (internal quotation marks omitted). If the answer to this question is yes, however, the scope of the court's review of the award itself is limited. Notably, we do not consider "whether the arbitrators correctly decided [the] issue." Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d at 262 (internal quotation marks omitted). If the parties agreed to submit an issue for arbitration, we will uphold a challenged award as long as the arbitrator offers "a barely colorable justification for the outcome reached." Id. at 260 (internal quotation marks omitted). In other words, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," a court's conviction that the arbitrator has "committed serious error" in resolving the disputed issue "does not suffice to overturn his decision." United Paperworkers Int'l Union AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987); accord 187 Concourse Assocs. v. Fishman, 399 F.3d at 526.

Applying these principles to this case, we consider only whether, in light of the parties' agreement to arbitrate, the arbitrators were authorized to sanction bad faith conduct by awarding attorney's and arbitrator's fees. We do not – nor does respondent ask us to – consider whether the arbitrators correctly identified bad faith conduct or whether the amount of fees awarded was an appropriate sanction for that conduct.

B.     The Parties' Broad Agreement to Arbitrate Conferred on the Arbitrators the Equitable Authority to Sanction a Party's Bad Faith Conduct

7

Where an arbitration clause is broad, arbitrators have the discretion to order such remedies as they deem appropriate. See Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d at 262. This is because it is "not the role of the courts to undermine the comprehensive grant of authority to arbitrators by prohibiting" them from fashioning awards or remedies to "ensure[ ] a meaningful final award." Id. (concluding that arbitrators did not exceed their authority by requiring foreign reinsurer to post pre-hearing security); see also 1 Martin Domke, Domke on Commercial Arbitration § 35:1 (3d ed. 2008) ("Limited only by the broad concepts of equity and justice, the arbitrator has a plethora of remedies, both legal and equitable, to choose from in structuring a remedy.").

Consistent with this principle, we here clarify that a broad arbitration clause, such as the one in this case, see Coinsurance Agreements § 10.1, confers inherent authority on arbitrators to sanction a party that participates in the arbitration in bad faith and that such a sanction may include an award of attorney's or arbitrator's fees.[2] This conclusion finds support in Synergy Gas Co. v. Sasso, 853 F.2d 59, wherein this Court ruled that, after an arbitrator ordered the reinstatement of a discharged employee with backpay, the arbitrator did not exceed his authority in further awarding the employee's union attorney's fees. In so

---

[2]    Our dissenting colleague takes issue with the principle we articulate here, pointing out that "inherent authority is authority which is not conferred." Post at [ ]. But this misunderstands our point:  We mean simply that the authority to sanction inheres in the comprehensive arbitral authority. As we discuss herein, the inherent authority of arbitrators to impose sanctions in such circumstances has been recognized by our own court and by sister circuits.

8

holding, we noted that "[a]rbitrators have . . . occasionally awarded attorney's fees" in circumstances where one party had acted in bad faith and that such fees fairly compensated the party for costs incurred as a result of such actions. Id. at 65. In that case, we specifically observed that "if Synergy had not acted in bad faith, then [the employee] Brown would have been reinstated more than six years ago and the attorney's fees would not have been incurred." Id. at 66. Accordingly, we concluded that such an award of attorney's fees did not contravene New York's public policy against punitive arbitration awards because the fees were compensatory, not penal, in nature and, thus, an appropriate form of damages granted to the aggrieved party.[3] See id.

The Ninth Circuit has also rejected a challenge to an arbitration award of attorney's fees, recognizing a bad faith exception to the general "American Rule" that each party bears its own attorney's fees. See Todd Shipyards Corp. v. Cunard Line, Ltd., 943 F.2d 1056, 1064 (9th Cir. 1991). The court explained: "Federal law takes an expansive view of arbitrator authority to decide disputes and fashion remedies . . . . In light of the broad power of arbitrators to fashion appropriate remedies and the accepted 'bad faith conduct' exception to the American Rule, we hold that it was within the power of the arbitration panel in this case to award attorneys' fees." Id.; see also Marshall & Co. v. Duke, 114 F.3d 188, 190

---

[3] Because National Travelers has not challenged the fee award on the ground that it was punitive, rather than compensatory, we have no occasion to consider an arbitrator's authority to award attorney's fees in excess of the amount necessary to compensate for the losses and expenses attributable to a party's arbitrating in bad faith.

(11th Cir. 1997) (noting that parties raised no jurisdictional challenge to attorney's fee award, but observing that, "[i]n any event, the arbitrators have the power to award attorney's fees pursuant to the 'bad faith' exception to the American Rule that each party bears its own attorney's fees").

EMC submits that this case is distinguishable because the agreement at issue in Todd Shipyards Corp. v. Cunard Line, Ltd. specifically integrated Rule 43 of the Commercial Rules of the American Arbitration Association, which states that "'[t]he arbitrator may grant any remedy or relief which the Arbitrator deems just and equitable within the scope of the agreement of the parties.'" 943 F.2d at 1062-63 (quoting Rule 43). We do not, however, consider a reference to Rule 43 to be essential where, as in this case, the parties' arbitration clause applies broadly to every dispute arising under their agreement, see Coinsurance Agreements § 10.1, and where the arbitrators find that a party did not arbitrate in good faith, see Domke on Commercial Arbitration § 35:8 ("As a general rule, each party to an arbitration must bear its own attorney fees associated with an arbitration action or the enforcement of an arbitration award. Nevertheless, [the Federal Arbitration Act] . . . grant[s] wide authority to the arbitrator to determine entitlement to attorney fees. . . . Under some circumstances, the prevailing party may recover attorney fees if the parties provide for the remedy of attorney fees in their arbitration agreement or if authorized by a statute, or if justified by circumstances in which the losing party acted in bad faith." (emphasis added)). Indeed, the underlying purposes of arbitration, i.e., efficient and swift resolution of disputes without

10

protracted litigation, could not be achieved but for good faith arbitration by the parties. Consequently, sanctions, including attorney's fees, are appropriately viewed as a remedy within an arbitrator's authority to effect the goals of arbitration.

C. Section 10.3 of the Parties' Agreement Did Not Limit the Arbitrators' Authority to Award Attorney's and Arbitrator's Fees as a Sanction for Bad Faith Conduct

While a broad arbitration clause affords arbitrators considerable discretion to award such remedies as they deem appropriate, they may not "exceed the power granted to them by the contract itself." Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d at 262. EMC does not contend that section 10.1 of the agreement to arbitrate is not sufficiently broad to authorize the arbitrators to sanction bad faith conduct. Rather, its position has consistently been that section 10.3 limits that sanction authority to exclude awards of attorney's or arbitrator's fees. We conclude that this is not a proper construction of section 10.3.

In interpreting a contract under New York law, "words and phrases . . . should be given their plain meaning." LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) (internal quotation marks omitted). Section 10.3 simply states the general American Rule that each party will bear its own attorney's fees and extends the principle to apply also to the fee of the arbitrator selected by each party. Thus, section 10.3 is fairly understood to reflect the parties' agreement as to how fees are to be borne, regardless of the arbitration's outcome, in the expected context of good faith dealings. See

11

Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir. 2006) (holding that, under New York law, "a covenant of good faith and fair dealing" is implicit in every contract). Nothing in the section, however, signals the parties' intent to limit the arbitrators' inherent authority to sanction bad faith participation in the arbitration. Certainly, nothing in Article X generally, or section 10.3 specifically, references bad faith or sanction remedies. Accordingly, we have no basis for thinking that the parties to this agreement ever considered the question of whether to limit the arbitrators' authority to sanction bad faith conduct. In contrast, they did expressly confer comprehensive arbitral authority in section 10.1. In light of that conferral, we conclude that section 10.3 is properly construed to reflect the parties' agreement that the arbitrators may not factor attorney's or arbitrator's fees into awards that result from the parties' expected good faith arbitration of a dispute. The section does not signal the parties' intent to limit the conferral of comprehensive authority by precluding an award of attorney's or arbitrator's fees when a party's bad faith dealings create a recognized exception to the American Rule.

EMC asserts that such a reading of section 10.3 is contrary to New York principles of contract interpretation. It submits that, because the American Rule would apply by default even in the absence of section 10.3, reading the section as a simple articulation of the American Rule would render it superfluous. See Galli v. Metz, 973 F.2d 145, 149 (2d Cir. 1992) (noting that "[u]nder New York law, an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be

avoided if possible" (internal quotation marks omitted)).  We are not persuaded.  Parties to

commercial arbitration agreements may choose explicitly to reference the American Rule for

any number of reasons unrelated to the scope of the arbitrators' sanction authority.  For

example, some arbitrators may not be attorneys and, thus, may be unfamiliar with the

American Rule.  Still other arbitrators may come from jurisdictions that employ the "English

Rule" where the prevailing party's fees are routinely paid by an unsuccessful opponent.

Precisely because the agreement in this case conferred broad authority on the

arbitrators, because inherent in such authority is the power to sanction bad faith conduct, and

because bad faith is a well-recognized exception to the American Rule for attorney's fees,

we conclude that the simple statement of that Rule in section 10.3 is insufficient by itself to

swallow the exception.[4]  As sophisticated commercial entities, the parties were certainly

---

[4]     The dissent cites InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG,
373 F. Supp. 2d 340 (S.D.N.Y. 2005), for the proposition that only courts, not arbitrators,
have the authority to impose attorney's fees pursuant to the bad faith exception to the
American Rule.  See post at **[ ]**.  In InterChem, however, the district court confirmed part of
the arbitrator's award of attorney's fees for bad faith.  In upholding the arbitral award, the
district court recognized that "[a]ttorney's fees are normally not shifted onto a party under
the 'American Rule' . . . .  However, despite the 'American Rule,' under some circumstances,
the losing party can be assessed attorney fees where that party 'acted in bad faith,
vexatiously, wantonly, or for oppressive reasons.'"  Id. at 355 (internal citations omitted).
In reaching that conclusion, the court relied on Todd Shipyards Corp. v. Cunard Line, Ltd.,
943 F.2d 1056, which we have also cited in support of our conclusion that arbitrators have
inherent authority to sanction bad faith as an exception to the American Rule.
        The dissent's lengthy quote from InterChem is taken from the district court's
discussion of an arbitrator's authority to award attorney's fees against the attorney who
represented a party in the course of arbitration and who was not himself a party to the
arbitration agreement.  See id. at 355.  We need not address the issue of such an award here

13

capable of stating clearly any intent to exclude attorney's and arbitrator's fees from the broad range of sanctions generally available to arbitrators upon an identification of bad faith. Thus, our holding today should not be understood to preclude parties who wish to limit the scope of an arbitrator's sanction authority to exclude attorney's fees or arbitrator's awards from doing so. We require only that they explicitly and clearly state that intent as part of their agreement to arbitrate.

## IV.    Conclusion

To summarize, we conclude

(1) that the parties' agreement to arbitrate in this case was sufficiently broad to confer equitable authority on the arbitrators to sanction a party's bad faith participation in the arbitration;

(2) that an arbitrator's identification of bad faith gives rise to an exception to the generally applicable American Rule that each party bears its own attorney's fees; and

(3) that the statement of the American Rule in section 10.3 of the parties' agreement is properly construed to limit the arbitrators' authority to award attorney's and arbitrator's fees only where the parties participate in the arbitration in good faith; a more explicit statement would be necessary to manifest any intent to override the bad-faith exception to the American Rule and to preclude the arbitrators from awarding attorney's and arbitrator's

_____

because the challenged attorney's fees were awarded only against National Travelers, a party in the arbitration proceedings.

14

fees as a sanction for bad faith conduct.

Accordingly, the judgment of the district court is REVERSED IN PART insofar as it vacates the award of attorney's and arbitrator's fees and the case is REMANDED with directions that the district court enter judgment confirming the arbitration award in all respects.

POOLER, Circuit Judge, dissenting:

This Court has apparently never decided a case raising the precisely identical issue presented by the instant appeal. Nevertheless, the general principle which I believe should govern our decision here is pellucid: "[V]acatur [of an arbitral award] is appropriate only if the arbitral award contradicts an express and unambiguous term of the contract [between the parties] or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract." Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 222 (2d Cir. 2002).

I believe that the majority has disregarded this principle and in so doing fails to acknowledge that the arbitral award at issue here plainly contradicts an express and unambiguous term of the contract entered into by Reliastar and EMC. Specifically, the arbitral award could not properly include an award of attorney's fees to Reliastar, even if that award was based upon the arbitral panel's reasonable conclusion that EMC should be sanctioned for bad faith conduct during the arbitration proceedings, because the contract between Reliastar and EMC divested the arbitral panel of any authority to make an award of attorney's fees. Thus, I believe that this portion of the award was in excess of the arbitrator's authority and should be vacated pursuant to Section 10(a)(4) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(4). I must therefore respectfully dissent.

Arbitration is of course a matter of contract and, as the Supreme Court has recently reaffirmed, parties are free to design "many features of arbitration by contract, including the way arbitrators are chosen, what their qualifications should be, which issues are arbitrable, along with procedure and choice of substantive law." Hall St. Assocs., LLC v. Mattel, Inc., __ U.S. __, 128 S.

16

Ct. 1396, 1404 (2008).[5]  Thus, "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of agreements to arbitrate."  Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989).

The parties here chose to arbitrate under a set of procedural rules, including the following rule set forth in Section 10.3 of the reinsurance contract: "Each party shall bear the expense of its own arbitrator . . . and related outside attorneys' fees, and shall jointly and equally bear with the other party the expenses of the third arbitrator."  The majority terms this "a general statement." Opinion at 2.  This characterization implies that Section 10.3 admits of certain exceptions.  It does not; it is unqualified.  The majority also speaks of "the proper construction" of Section 10.3. Opinion at 11.  But Section 10.3 is no more susceptible to construction than is Article II, Section I of the U.S. Constitution which provides that no person shall be eligible to be President "who shall not have attained to the Age of thirty five years."[6]  I therefore think that the district court was merely

---

[5]  In Hall Street Assocs., the Supreme Court held that the judicial review provisions of the FAA are exclusive and that parties are therefore not free to draft an arbitration provision which purports to give federal courts a broader scope for review of arbitration awards than that set forth in the Act.  (Specifically, the arbitration agreement at issue allowed a district judge to vacate an arbitral award upon a finding that it was not supported by substantial evidence or that the arbitrator's conclusions of law were erroneous.  128 S. Ct. at 1400.)  Although the decision therefore announces a limit on the ability of parties to draft arbitration agreements as they choose, it has no relevance to the instant appeal because the FAA certainly does not preclude parties from choosing to bear their own arbitration fees and costs.

[6]  See John Hart Ely, Democracy and Distrust: A Theory of Judicial Review 13 (1980) ("Constitutional provisions exist on a spectrum ranging from the relatively specific to the extremely open-textured.  At one extreme – for example the requirement that the President 'have attained to the Age of thirty five years – the language is so clear that a conscious reference to purpose seems unnecessary.").  Similarly, the language of Section 10.3 is so clear that, as will be

17

declaring the obvious in stating that Section 10.3 "is clear as a bell." Reliastar Life Ins. Co. of N.Y. v. EMC Nat'l Life Ins. Co., 473 F. Supp. 2d 607, 609 (S.D.N.Y. 2007).

Given the clarity of the meaning of Section 10.3, the proper disposition of the instant appeal seems to me to be close to self-evident. As recently stated by a district court of our Circuit in a labor arbitration case, an arbitral panel's authority to fashion relief is bounded by the intent of the parties whose contract created the arbitral panel:

> "An arbitrator's authority to settle disputes under a collective bargaining agreement is contractual in nature, and is limited to the powers that the agreement confers." Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674, 916 F.2d 63, 65 (2d Cir. 1990). The arbitrator "'may not impose a remedy which directly contradicts the express language of the collective bargaining agreement.'" Id. (quoting Bruno's, Inc. v. United Food and Commercial Workers Int'l Union, Local 1657, 858 F.2d 1529, 1531 (11th Cir. 1998)).

Beth Israel Med. Ctr. v. 1199/S.E.I.U. United Healthcare Workers East, 530 F. Supp. 2d 610, 614 (S.D.N.Y. 2008). In other words, as the majority itself recognizes, Opinion at 11, this Court has made it clear that "arbitrators have the discretion to order remedies they determine appropriate, so long as they do not exceed the power granted to them by the contract itself." Banco de Seguros Del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 262 (2d Cir. 2003) (emphasis added).

"Thus, just as a private agreement may vest decision-making authority in an arbitrator, so may it deprive an arbitrator of that authority." Hoeft v. MVL Group, Inc., 343 F.3d 57, 66 (2d Cir. 2003), overruled on other grounds by Hall Street Assocs., 128 S.Ct. at 1403-04. We have therefore repeatedly held that arbitrators cannot award forms of relief which are plainly in contradiction with

---

discussed below, the majority's attempt to divine its purpose is unwarranted.

the authority afforded them under the contract between the parties, <u>even</u> when the relief appears to be in furtherance of the arbitrator's reasonable notion of what fairness or good sense requires. <u>See, e.g.</u>, <u>Porzig v. Dresdner, Kleinwort, Benson, North America, LLC</u>, 497 F.3d 133, 140-41 (2d Cir. 2007) (arbitration panel had no authority to fashion award of attorney's fees which required attorney to reimburse his client because attorney was not a party to arbitration agreement); <u>187 Concourse Assocs. v. Fishman</u>, 399 F.3d 524, 527 (2d Cir. 2005) (where arbitration agreement clearly provided that employee could be terminated for just cause, arbitrator had "no authority . . . to fashion an alternative remedy" which directed that employee be reinstated for probationary period); <u>Katz v. Feinberg</u>, 290 F.3d 95, 98 (2d Cir. 2002) (per curiam) (in case involving sale of firm, arbitral panel erred in computing firm's value where parties' sale agreement explicitly afforded firm's accountants with sole and final authority to assess its value); <u>United States v. Am. Soc'y of Composers, Authors and Publishers</u>, 32 F.3d 727, 732-33 (2d Cir. 1994) (arbitral panel could not set new rate of payment to composers of advertising jingles because "nothing in [the parties' contract] gives an arbitration panel authority to modify any rule or regulation . . . . If a rule is found by an arbitration panel to be arbitrary, it may declare such rule void. . . . Thus, the panel's authority was exhausted after it declared the three-percent rule void."); <u>Harry Hoffman Printing, Inc. v. Graphic Communications Int'l Union, Local 261</u>, 950 F.2d 95, 99 (2d Cir. 1991) (arbitral panel erred in relying upon "the concept of 'elementary due process'" in holding that workers must be afforded notice before dismissal because "[n]either Section 4.2 nor 39.1 [of the parties' contract], the only provisions discussed by the Panel in concluding that notice was necessary, provide for such a broad concept as 'due process'"); <u>Marine Pollution Serv., Inc. v. Local 282, Int'l Bhd. of Teamsters, Chauffeurs,</u>

Warehousemen and Helpers of America, 857 F.2d 91, 95 (2d Cir. 1988) ("In the instant case, the arbitrator breached his responsibility to the parties by importing his notions of equity into the arbitration proceeding. His award was not drawn from the contract but from his concern that Transit Mix drivers be allowed some opportunity for employment while their own employer restructured its operations."); see also Missouri River Servs., Inc. v. Omaha Tribe of Nebraska, 267 F.3d 848, 857 (8th Cir. 2001) (arbitration panel exceeded its authority by ordering that its award be satisfied out of profits of Indian tribe's Iowa casino because arbitration agreement specifically provided that any award would be satisfied out of profits from tribe's Nebraska casino); Swift Indus., Inc. v. Botany Indus., Inc., 466 F.2d 1125, 1127-28 (3rd Cir. 1972) (arbitrator erred in awarding large cash bond to protect a party from possible future tax liability when contract only allowed for cash remedies for liabilities already "incurred or suffered"); J.P. Greathouse Steel Erectors, Inc. v. Blount Bros. Constr. Co,, 374 F.2d 324, 325 (D.C. Cir. 1967) ("arbitrators exceeded their authority" when they "required Greathouse to pay all the expense of the arbitration, although the subcontract provided that 'Each party shall pay one-half the expense'" of the arbitration proceeding).

The majority makes three attempts to invest the arbitral panel with the authority which Section 10.3 plainly denies it. First, it relies upon two cases in which arbitrators awarded attorney's fees to a party as a sanction for its adversary's bad faith conduct during the arbitration proceeding. Opinion at 8-9 (discussing Synergy Gas Co. v. Sasso, 853 F.2d 59 (2d Cir. 1988) and Todd Shipyard Corp. v. Cunard Line, Ltd., 943 F.2d 1056 (9th Cir. 1991)). But this reliance is misplaced because there is no indication in either of these opinions that the arbitral award of attorney's fees was in conflict with any contractual provision setting forth the parties' intent with respect to attorney's

20

fees.[7]

Second, the majority asserts that Section 10.3 sets forth "the American Rule" to the effect that each party is responsible for its own attorney's fees and that "bad faith is a well-recognized exception to the American Rule." Opinion at 13. This is uncontroversial. But the majority provides no authority for the proposition that an exception which is properly recognized by a <u>court</u> is equally recognizable by an arbitrator. Indeed, District Judge Marrero of our Circuit has rejected the argument that the judicial authority to sanction bad faith conduct inheres in arbitrators:

> The Court cannot identify, nor did the Arbitrator provide, any authority that supports an arbitrator's ability to award attorney's fees against an attorney appearing before him. While a <u>court</u> clearly can award attorney's fees against an attorney as a sanction in certain circumstances, there is no authority supporting the Arbitrator's decision to sanction [the respondent's attorney] in this case.

<u>InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG</u>, 373 F. Supp. 2d 340, 355-56 (S.D.N.Y. 2005). Judge Marrero's position strikes me as perfectly correct.[8] As applied to the

---

[7] In <u>Synergy Gas Co.</u>, in light of the arbitrator's lack of authority under New York law to award punitive damages, it is not clear that this Court even considered the award of attorney's fees as the imposition of a sanction: "Rather, the award can be considered compensatory because if Synergy has not acted in bad faith, then Brown would have been reinstated more than six years ago and the attorney's fees would not have been incurred." 853 F.2d at 66. There is nothing in the arbitral award in the instant case which suggests that the arbitrators viewed the award of attorney's fees as compensatory. On the contrary, as the majority recognizes, the award was made "without explanation." Opinion at 4.

[8] In contrast, Judge Marrero upheld the arbitrator's sanction of attorney's fees as to the respondent itself. But this was not because of the arbitrator's authority to sanction, but because the parties' arbitration agreement provided for the application of the rules of the American Arbitration Association, which themselves provide for the awarding of attorney's fees if the parties request them. 373 F. Supp. 2d at 354. The award was therefore upheld <u>in spite</u> of the arbitrator's lack of authority to impose sanctions: "The Arbitrator's reference in one part of the Arbitration Award to his award of attorney's fees as an imposition of sanctions does not change

21

instant case, I cannot see any justification for holding that an arbitrator has the authority to apply an exception to the American Rule, even if it is a well-recognized one, in disregard of the contract between the parties which provides <u>without exception</u> that the American Rule should apply.

Finally, the majority relies upon the scope of the general arbitration clause in the agreement between the parties, Section 10.1, which is correctly characterized as "appl[ying] broadly to every dispute arising under their agreement." Opinion at 10. The majority concludes that an arbitration clause of this breadth "confers inherent authority on arbitrators to sanction a party that participates in the arbitration in bad faith and that such a sanction may include an award of attorney's or arbitrator's fees." Opinion at 8. I am troubled by this statement first of all because it is a flat contradiction in terms. That is, inherent authority is authority which is not conferred; inherent authority is possessed regardless of the intentions of those who have the power to confer authority. More importantly, the majority's conclusion contradicts this Court's recognition "of the dominance of specific over general arbitration provisions." <u>Katz v. Feinberg</u>, 290 F.3d at 96. In <u>Katz</u>, a case involving the sale of a firm, we held that a broad arbitration clause did not give arbitrators to the authority to compute the value of the firm where the agreement also contained a specific provision assigning that task to the firms accountants:

> The parties' Purchase Agreement includes both a specific provision, § 2(b), assigning determination of the Final Share Price to the Company Accountants, and a generally worded arbitration provision, § 14(g), assigning all claims arising from the agreement to an arbitrator. Under existing law, we find that the more specific assignment should govern.

---

the fact that such an award was within the scope of the Arbitrator's authority." <u>Id.</u>

22

Id. at 98. The application of this principle to the instant case is beyond dispute. The specific provision, Section 10.3, providing that the parties shall bear their own attorney's fees, precludes any reliance upon the general arbitration provision, Section 10.1, as a source of an award of attorney's fees to EMC.

In addition, I must note my unease with concept of what the majority terms "the arbitrators' inherent authority to sanction <u>bad faith</u> participation in the arbitration." Opinion at 12. Beyond the fact that the majority has made little effort to define the scope and limits of this authority, the notion of authority inhering in an arbitral panel, whose authority is derived from the agreement of the parties before it, is problematic. I would again point to the sound reasoning of Judge Marrero:

> [F]inding that the Arbitrator had inherent authority to sanction [the respondent's attorney] would directly contradict the principle that an arbitrator's authority is circumscribed by the agreement of the parties. That principle flows from the basic understanding that arbitration is a consensual arrangement meant to reflect a mutual agreement to resolve disputes outside of the courtroom. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1985) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration.") . . . .

InterChem Asia 2000 Pte. Ltd., 373 F. Supp. 2d at 358.

I must also express my disagreement with the majority's attempt to dismiss Section 10.3 as mere boilerplate:

> Parties to commercial arbitration agreements may choose explicity to reference the American Rule for any number of reasons unrelated to the scope of the arbitrators' sanction authority. For example, some arbitrators may not be attorneys and, thus, may be unfamiliar with the American Rule. Still other arbitrators may come from jurisdictions that employ the "English Rule" where prevailing party's fees are routinely paid by an unsuccessful opponent.

23

Opinion at 13.

But the limitation of Section 10.3 to these anodyne purposes must be rejected as pure surmise. On the contrary, it is easily imaginable that the explicit provision for the American Rule in an arbitration agreement might be a consideration in a party's strategic approach to an arbitration proceeding. For example, a party may believe that its position in the dispute to be arbitrated is unlikely to prevail and knowing that it will bear its own attorney's fees, might inform its attorneys to refrain from exerting undue efforts on the case. In any event, this Court has no basis upon which to conclude that the parties' inclusion of Section 10.3 in their agreement was a matter of little consequence to them.

In conclusion, I certainly do not wish my disagreement with the majority to be construed as in any way condoning or excusing bad faith conduct in arbitration proceedings.[9] It is an interesting question as to whether or not the arbitral panel might have awarded a sanction against EMC other than the award of attorney's fees to Reliastar. I tend to think it could because "while an arbitrator may not award relief expressly forbidden by the agreement of the parties, an arbitrator may award relief not sought by either party, so long as the relief lies within the broad discretion conferred by

---

[9] On the other hand, it should not be forgotten that a major feature of arbitration is that it is a less rule-governed proceeding than is litigation in a judicial forum and that, as a result, it is likely to have something of a rough and tumble character. But the relatively unstructured nature of arbitration should certainly not serve as a basis for a federal court's post-bellum application of the standards of a litigation proceeding upon an arbitration which may have fallen short of those standards. On the contrary, "the recognition that arbitration procedures are more streamlined than federal litigation is not a basis for finding the forum somehow inadequate; the relative informality of arbitration is one of the chief reasons that parties select arbitration. Parties 'trad[e] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" 14 Penn Plaza, LLC v. Pyett, __ U.S. __, 2009 WL 838159 at *13 (Apr. 1, 2009) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 634 (1985)).

24

the FAA." <u>Telenor Mobile Communications AS v. Storm LLC</u>, 524 F. Supp. 2d 332, 359 (S.D.N.Y. 2007). In any event, the source of such an award would not be the "inherent authority" of the arbitrator, a concept not recognized by the FAA. But the arbitral panel here clearly awarded relief expressly forbidden by the agreement of the parties. I must therefore respectfully dissent.