NAOMI REICE BUCHWALD, UNITED STATES DISTRICT JUDGE
*472 Petitioner Salus Capital Partners, LLC ("Salus" or "petitioner") initiated this action in New York State Supreme Court by filing a petition to confirm an April 2017 arbitration award granted in its favor. Respondent Andrew Moser ("Moser" or "respondent") timely removed the action to this Court and thereafter filed a motion to partially vacate the award. For the reasons stated herein, Salus's petition is granted and Moser's motion is denied.
Background
I. Underlying Facts
In November 2011, Moser was hired as President and CEO of Salus, a financial and asset management company. Partial Final Award, Petition Ex. C ("Partial Award"), at 5. The relationship between the parties was governed by two agreements: an employment agreement, governed by New York law, first executed in November 2011 and later amended as of August 26, 2014 (the "Employment Agreement"), and a Limited Liability Agreement, governed by Delaware law, effective as of December 1, 2011 ("LLC Agreement"). Partial Award at 5. Both the Employment and LLC Agreements contain arbitration clauses. Pursuant to Section 17(a) of the Employment Agreement, "Employee and Company agree to arbitrate any controversy or claim arising out of this Agreement or otherwise relating to Employee's employment by Company or the cessation of such employment for any reason ...." Petition Ex. B. § 17(a). Under Section 10.2(a) of the LLC Agreement, "Each of the Members agrees to arbitrate any controversy or claim arising out of this Agreement or otherwise relating to the Members' Interests." Petition Ex. C § 10.2(a).
In April 2015, Salus terminated Moser, without cause, for "poor performance, lack of trustworthiness, lack of transparency with respect to the value of the loan portfolio, and disparagement of" Salus's corporate, and publically traded parent, HRG Group, Inc. ("HRG"). Partial Award at 5, 9. Thereafter, Salus conducted a "routine due diligence review" of Moser's emails, which uncovered evidence that Moser had "affirmatively sought to conceal unauthorized personal charges on the corporate credit card." Id. at 9. Because Moser had signed the auditor's letter for Salus's consolidated financial statements, attesting that he had no knowledge of "fraud or suspected fraud," Salus retained outside counsel, Skadden Arps ("Skadden"), to conduct an internal investigation and "to advise it on the potential regulatory implications and its potential affirmative obligations." Id. at 9-10.
In June 2015, Skadden, relying in part on the forensic accounting efforts of AlixPartners, concluded that there was "substantial evidence that Mr. Moser misappropriated company funds for personal use." Id. at 11. Skadden determined, however, that "None of the misconduct affected Salus clients [or] materially harmed HRG investors." Id. at 12 (alterations in original).
Moser misappropriated company funds in three ways. First, Moser retained a vendor, Audio Visual Intelligence ("AVI"), which was concurrently providing services to Salus, to install almost $100,000 worth of audio-visual equipment in his homes. Id. at 6. Moser charged the equipment to his corporate credit card and requested the vendor's owner, James Shapiro ("Shapiro"), to create and submit falsified invoices *473 to substantiate the charges. Id. Specifically, Moser asked that Salus's office address be substituted on the invoices for the addresses of his homes where the work was actually performed, and "instructed Shapiro to make the descriptions of the work performed 'plain' and that 'work invoices' be produced ... to falsify the descriptions of the work performed ... to make them appear as if the work had been performed on Salus's premises." Id. at 6-7.
Second, Moser incurred more than $90,000 in "questionable charges" beyond the AVI charges on his corporate credit card, including for purchases of patio furniture; watches; items on Amazon.com; family travel expenses; purchases at gas stations, coffee shops, grocery and liquor stores; and for miscellaneous items, such as Boston Bruins gear. Id. at 8, 16. Moser also used Salus's corporate jet account for multiple trips for himself and his family, costing Salus over $35,000. Id. at 17.
Third, in 2013, while Salus was serving as the collateral manager for collateralized loan obligations for Radio Shack, Moser purchased a $25,000 zero-coupon subordinated note, through which he would receive $25,000 on the note's 2021 maturity date "and periodic interest payments along the way." Id. at 8. By late 2014, however, the value of the note was expected to diminish "significantly" with Radio Shack's impending bankruptcy "of which Moser was fully aware." Id. Moser, therefore, caused Salus to purchase his interest at a full face value of $25,000, "knowing that the shortfall in value would ultimately likely be borne by Salus." Id.
By a June 2, 2015 letter from counsel, Salus notified Moser's counsel that a number of "troubling issues" had come to light, including "strong evidence showing that [Moser] had misappropriated corporate funds and resources for personal use." Id. at 12 (alterations in original). Salus sought to meet with Moser "so he c[ould] address these issues directly." Id. Instead, Moser "curiously" wrote a letter to his former assistant "explaining that he charged personal expenses to the corporate credit card so that Salus could benefit from the 'points' earned on the credit card but assured her that he ... would reimburse Salus." Id.
After multiple failed efforts to meet with Moser, Salus re-characterized Moser's termination as one for cause in July 2015. Id. Soon thereafter, Moser's counsel acknowledged that Moser would "reimburse Salus for all personal expenses charged on a corporate credit card," but could not confirm the amount owed as he "did not have access to the relevant documents." Id. at 13. Then, in August 2015, Moser and his counsel met with Salus to review Moser's corporate credit card statements. Id. Moser "personally noted" which charges were personal in nature, valued at approximately $140,000, including the AVI charges, the purchase of the patio furniture, meals, and personal vacations. Id."He also asked for additional time to research and confirm some additional charges." Id."Neither Moser nor his counsel ever got back to [Salus] with respect to these open items, nor was payment ever made or the admitted indebtedness put in escrow." Id.
II. The Arbitration Proceeding
In September 2015, Salus initiated an arbitration proceeding against Moser pursuant to the Employment and LLC Agreements. Id. at 1. Salus asserted various claims, including breach of contract, breach of fiduciary duty and the duty of loyalty, fraud, conversion, and violation of New York's faithless servant doctrine. Id.
In a thorough, twenty-seven page decision, the arbitrator concluded that Moser had "charged substantial personal expenses to his Salus credit card," and had "compounded his error by not repaying this indebtedness, despite repeatedly *474 promising to do so." Id. at 14. These failings, however, "pale in contrast to Moser's pre-meditated and focused plan to falsify invoices and deceive Salus as to the true nature of the expenses incurred, directly involving a vendor in his scheme. That was fraud." Id.
The arbitrator awarded $98,355.86 in reimbursement for the fraudulent AVI invoices, $90,964.55 for miscellaneous personal charges on Moser's corporate credit card, and $35,075.10 for Moser's personal use of Salus's NetJets account.[1] Partial Award at 25; Final Award, Petition Ex. D ("Final Award"), at 8.
Concluding that Moser had manipulated AVI invoices to fraudulently transfer personal charges to Salus and to deceive Salus as to his intent, the arbitrator awarded the disgorgement of Moser's compensation from June 2014 until his final payment. Partial Award at 22-24. The arbitrator found the disgorgement of $879,514.02 warranted under New York's faithless servant doctrine, which "provides that an employee must forfeit the compensation earned during a period that he or she violates the duty of loyalty or fidelity in the performance of that employee's duties to the employer." Partial Award at 22; Final Award at 8.
The arbitrator awarded $748,155.49 in attorneys' fees and costs incurred in Skadden's investigation following Moser's termination. Final Award at 8. "As a registered investment adviser, Salus bears substantial reporting obligations to the SEC and has fiduciary duties to its investors.... Salus's decision to conduct an outside investigation was both prudent and necessary and was caused solely by Moser's malfeasance coupled with his failure to fully cooperated [sic] when his fraudulent acts were uncovered." Partial Award at 20.
The award also included $422,746.43 in Salus's attorneys' fees and costs incurred in the arbitration proceeding itself. Final Award at 8. Moser had continued his evasive behavior throughout the arbitration. Early on, Moser was granted an adjournment of the arbitration hearing on the basis of his counsel's representation that Moser "suffered from a serious health condition." Partial Award at 2. At a subsequent conference, his counsel represented that "Moser's poor health prevented him from participating in the proceeding for the 'foreseeable future,' " submitting a doctor's note in support thereof. Id. Yet after Salus presented "credible evidence" that Moser was "gainfully employed-indeed, traveling extensively, including cross country," Moser declined to make his physician available for a preliminary hearing. Id. Moser also failed to appear for five noticed and scheduled depositions, as well as multiple telephonic case management conferences, despite being repeatedly reminded by the arbitrator. Id. at 2-4. And Moser refused to comply with a subpoena duces tecum by failing to appear at the arbitration hearing which had been rescheduled on multiple occasions at his request. Id. at 3, 4 n.4.
Finally, pursuant to N.Y. C.P.L.R. § 5001, the arbitrator awarded $324,622.35 in pre-award interest that had accrued with respect to Moser's personal charges, disgorged income, and Salus's attorneys' fees and costs.[2] Final Award at 7-8.
* * *
Salus filed the instant petition to confirm the arbitration award in New York *475 Supreme Court in July 2017. Several weeks later, Moser removed the petition to this Court and moved for partial vacatur.
Discussion
Moser challenges the arbitral award on multiple bases. First, he contends that the arbitrator exceeded his power in awarding Salus's attorneys' fees and costs. Second, he argues that the arbitrator erred by misapplying the faithless servant doctrine in awarding Salus his disgorged compensation. Finally, respondent asserts that the award is excessive in comparison to the "amount in controversy," the personal charges he incurred, and thus impermissibly punitive. We proceed to analyze each alleged ground for vacating the award seriatim and, finding each to be meritless, grant Salus's petition to confirm the arbitration award. Before doing so, however, we first consider two threshold issues raised by Moser and Salus, respectively; whether this Court may exercise personal jurisdiction over Moser, and whether Moser's motion for partial vacatur is timely.
I. Personal Jurisdiction
Moser claims, as an initial matter, that this Court is unable to exercise personal jurisdiction over him because of purported defects in the service of Salus's petition. This is so, he explains, because he was never served a formal petition (instead, a petition in the form of an affidavit), and because proof of service was not timely filed in the court below.
Neither of Moser's arguments is persuasive. First, defects in pleadings such as petitions "shall be ignored if a substantial right of a party is not prejudiced." N.Y. C.P.L.R. § 3026 (McKinney 2017) ; see id. § 402. Moser offers no reason why he was prejudiced through Salus's use of an affidavit, entitled "Petition to Confirm Arbitration Award," that otherwise satisfies the requirements of New York's Civil Procedure Law and Rules. See, e.g., id. § 3013. Second, New York courts have expressly held that the filing of proof of service is not jurisdictional in nature; jurisdiction attaches once service (i.e., personal service and mailing of the petition and notice of petition) is complete. See, e.g., Conde v. Zaganjor, 66 A.D.3d 947, 886 N.Y.S.2d 829 (2d Dep't 2009). In this context, a petition must be served "at least eight days before the time at which the petition is noticed to be heard." N.Y. C.P.L.R. § 403(b). Moser was personally served on July 5, 2017, and service by mail occurred on July 7, 2017; both were accomplished almost an entire month before the August 3, 2017 return date. See ECF No. 19 at 2-3. Moser, therefore, has not identified any jurisdictional defects.
II. Timeliness of Moser's Motion
Salus asserts that because Moser's motion was served on July 27, 2017, more than three months after the arbitration award was issued, it is time barred under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), which governs this action.[3]
*476 The FAA provides that "[n]otice of a motion to vacate ... an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. The three month deadline is "not subject to extension." Barclays Capital, Inc. v. Hache, No. 16 Civ. 315 (LGS), 2016 WL 3884706, at *2 (S.D.N.Y. July 12, 2016) (citing Florasynth, Inc. v. Pickholz, 750 F.2d 171, 175 (2d Cir. 1984) ). While the FAA does not define the terms "filed or delivered," Rule 39(f) of the National Rules for Resolution of Employment Disputes of the American Arbitration Association ("AAA Rules"), which the parties agreed would govern the arbitration, provides:
The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail, addressed to a party or its representative at the last known address, personal service of the award, or the filing of the award in any manner that may be required by law.
Moser Reply Decl. Ex. N-1, at 1. See Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (parties may specify by contract the rules under which arbitration will be conducted); see also Dist. Council 1707 v. Hope Day Nursery, Inc., No. 05 Civ. 3642(RMB), 2006 WL 17791, at *3 (S.D.N.Y. Jan. 3, 2006) (applying AAA rules to determine date at which FAA accrual period begins), aff'd, 233 Fed.Appx. 32 (2d Cir. 2007).
Moser was emailed the final award on April 17, 2017, Brooks Decl. Ex. 11, yet served his motion to vacate on July 27, 2017, ECF No. 12, three months and ten days later. However, Moser did not receive the award by personal service or mail until July 5th and 7th, respectively, when Salus served its petition to confirm the arbitration award. See Moser Reply Decl. ¶ 7. Therefore, Moser's motion to vacate the award, served roughly three weeks later, is timely.
III. Vacatur
a. Standard of Review
"Vacatur of arbitral awards is extremely rare, and justifiably so." Hamerslough v. Hipple, No. 10 Civ. 3056 (NRB), 2012 WL 5290318, at *3 (S.D.N.Y. Oct. 25, 2012). "It is well established that courts must grant an arbitration panel's decision great deference." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003) ; see also Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993) ("Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."). Indeed, "confirmation of an arbitration award 'is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.' " D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Florasynth, 750 F.2d at 176 ).
b. Vacatur Pursuant to § 10(a)(4) of the FAA
Section 10(a) of the FAA provides four grounds upon which a federal court may vacate an arbitration award:
*477 (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party were prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
9 U.S.C. § 10(a)(1)-(4).
Of the four statutory grounds for vacatur, Moser relies solely upon the fourth in challenging the award of $1.2 million in attorneys' fees and costs, namely, that the arbitrator "exceeded [his] powers." The Second Circuit has " 'consistently accorded the narrowest of readings' to this provision of law." ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co., 564 F.3d 81, 85 (2d Cir. 2009) (quoting Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 262 (2d Cir. 2003) ). This strict limit on a reviewing court's power to vacate is intended to "facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 342 (2d Cir. 2010). A court's "inquiry under § 10(a)(4) thus focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 824 (2d Cir. 1997). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Thus, while an "arbitrator may not ignore the plain language of the contract ..., a court should not reject an award on the ground that the arbitrator misread the contract." Id.
Moser challenges two separate awards of attorneys' fees and costs: those incurred by Salus in conducting an investigation following Moser's termination, and those incurred by Salus in participating in the actual arbitration.
i. Attorneys' Fees and Costs Incurred in the Arbitration
Moser first challenges the award of Salus's attorneys' fees and costs incurred in the arbitration. As the arbitrator noted, "[t]his case presented numerous challenges which served to greatly expand the time and effort expended by counsel and, as a result, the costs of the proceeding.... [M]any of these challenges were the direct result of Moser's actions and various applications by him for adjournments and other relief.... [C]onsequences flowed from Moser's actions and the attendant additional costs are reflected in [Salus's] application." Final Award at 2.
"Where an arbitration clause is broad, arbitrators have the discretion to order such remedies as they deem appropriate." ReliaStar, 564 F.3d at 86. Among other things, a broad arbitration clause "confers inherent authority on arbitrators to sanction a party that participates in the arbitration in bad faith [which] may include an award of attorneys' ... fees." Id.
Both the Employment Agreement and the LLC Agreement contain "broad" arbitration clauses. Pursuant to Section 17(a) of the Employment Agreement, the parties agreed to "arbitrate any controversy or *478 claim arising out of this Agreement or otherwise relating to Employee's employment by Company or the cessation of such employment for any reason ...." Similarly, under Section 10.2(a) of the LLC Agreement, each member agreed "to arbitrate any controversy or claim arising out of this Agreement or otherwise relating to the Members' Interests." See, e.g., Vera v. Saks & Co., 335 F.3d 109, 117 (2d Cir. 2003) (holding that a provision requiring arbitration of any "dispute, claim, grievance or difference arising out of or relating to this agreement" was a broad provision). Moreover, the AAA Rules specifically empower the arbitrator to "grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law." Moser Reply Decl. Ex. N-1, at 1. Thus, the arbitration clauses in the parties' agreements vested the arbitrator with the authority to sanction Moser, awarding Salus's attorneys' fees, "for his repeated failure to comply with my Orders and to participate in good faith in these proceedings or allow himself to be examined by [Salus] in any manner." Partial Award at 4.
Moser does not necessarily dispute that the arbitration clauses are sufficiently broad to authorize the award of attorneys' fees and costs. Instead, he points to other provisions of the Employment and LLC Agreements that he reads as precluding such an award. Specifically, Section 17(b) of the Employment Agreement provides that the "Employee and Company shall each be responsible for paying its or her attorney's fees and costs in such arbitration to the fullest extent permitted by law," and Section 10.2(b) of the LLC Agreement specifies that "each member shall each be responsible for paying its or his attorney's fees and costs in such arbitration to the fullest extent permitted by law." These provisions, however, do not deprive an arbitrator of the authority to award attorneys' fees and costs as a sanction for bad faith conduct. In ReliaStar, the Second Circuit considered whether an arbitrator possessed the authority to impose attorneys' fees and costs as a sanction for bad faith arbitration conduct notwithstanding an American Rule attorneys' fees provision. See 564 F.3d at 88. The Circuit construed a remarkably similar provision-"[e]ach party shall bear the expense of its own arbitrator ... and related outside attorneys' fees"-as simply "reflect[ing] the parties' agreement as to how fees are to be borne, regardless of the arbitration's outcome, in the expected context of good faith dealings." Id. at 84, 88. Nothing "signal[led] the parties' intent to limit the arbitrators' inherent authority to sanction bad faith participation in the arbitration." Id. at 88.
As in ReliaStar, nothing in the parties' agreement indicates their intent to prevent the arbitrator from awarding attorneys' fees as a sanction . Indeed, neither Section 17(b) of the Employment Agreement nor Section 10.2(b) of the LLC Agreement speaks generally or specifically to the issue of bad faith or sanctions remedies. Thus, we have "no basis" to conclude that Moser and Salus "ever considered the question of whether to limit the arbitrator['s] authority to sanction bad faith conduct." Id. In light of the parties' broad conferral of authority in Section 17(a) of the Employment Agreement and 10.2(a) of the LLC Agreement, supra , Section 17(b) and Section 10.2(b) are "properly construed to reflect the parties' agreement that the arbitrator[ ] may not factor attorney's ... fees into awards that result from the parties' expected good faith arbitration of a dispute." Id. These sections do not "signal the parties' intent to limit the conferral of comprehensive authority by precluding an award" of attorneys' fees for a party's "bad faith dealings." Id.
*479 Moser contends that ReliaStar is "immensely distinguishable" because the arbitration panel in that case ordered an award of attorneys' fees " 'because it view[ed] the conduct of Petitioner as lacking in good faith,' " whereas in the instant case, the arbitrator "specifically cite[d] Paragraph 16 of the Employment Agreement [ (attorneys' fees incurred in seeking judicial enforcement) ] and Section 3.5(d) of the LLC Agreement [ (indemnity) ]," rather than his inherent authority to sanction misconduct, "as authorizing an award of attorneys' fees." ECF No. 34 at 18 (emphasis added). Moser misunderstands the applicable standard of review. Vacatur is warranted if the arbitrator lacked authority to impose an award, not simply if the arbitrator misidentified the authority under which he was empowered to act. See ReliaStar, 564 F.3d at 85-86 (If the "arbitrator's award draws its essence from the agreement to arbitrate," then "the scope of the court's review of the award itself is limited. Notably, we do not consider whether the arbitrators correctly decided the issue." (internal quotation marks omitted) ); see also Jock v. Sterling Jewelers, Inc., 646 F.3d 113, 122 (2d Cir. 2011) ("The focus of our inquiry in challenges to an arbitration award under section 10(a)(4) is 'whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue .' " (quoting DiRussa, 121 F.3d at 824 ) ).
The arbitrator possessed the power to award Salus its attorneys' fees and costs incurred in bringing and maintaining the arbitration.
ii. Attorneys' Fees and Costs Incurred in Connection with Skadden's Investigation
Moser also challenges the award of Salus's attorneys' fees and costs incurred in the investigation following Moser's termination. The arbitrator made the award pursuant to Section 3.5(d) of the LLC Agreement, an indemnification provision:
Each Member shall ... indemnify the Company ... against ... any damage, loss, liability, or expense, including reasonable attorneys' fees , as and when incurred, in connection with or resulting from such indemnifying Member's ... fraud, willful misconduct, or willful misapplication or willful misappropriation of funds.
LLC Agreement § 3.5(d) (emphasis added). Partial Award at 20-21.
Moser does not suggest that the fees awarded were not "reasonable," or even that he did not engage in "fraud, willful misconduct, or willful misapplication or willful misappropriation of funds." Instead, Moser points to governing Delaware law for the proposition that "[i]ndemnification provisions are construed narrowly ... to cover claims by third parties but not claims as between the contracting parties." HealthPro Bioventures, LLC v. Prometic Life Scis. Inc., No. 10 Civ. 3295(DLC), 2011 WL 5419706, at *11 (S.D.N.Y. Nov. 8, 2011). He also argues that, even if the award was warranted under the indemnification provision, awards of attorneys' fees and costs are prohibited by Section 17(b) of the Employment Agreement and Section 10.2(b) of the LLC Agreement (The parties "shall each be responsible for paying its or [his or her] attorney's fees and costs in such arbitration to the fullest extent permitted by law."). Neither argument is persuasive. The attorneys' fees incurred in Skadden's investigation are not costs of the arbitration, nor do they reflect "claims as between the contracting parties" so as to preclude indemnification. To the contrary, the investigative costs were incurred with respect to potential claims of, and responsibilities owed to, third parties:
*480 Salus's other members, advisees, and regulators.
Skadden's investigation became necessary because Moser made a misrepresentation in an auditor's letter in connection with Salus's consolidated financial statements. Partial Award at 9. "Salus's management, lacking the expertise internally, made the decision to retain outside counsel to advise it on the potential regulatory implications and its potential affirmative obligations in the face of the apparent misappropriation of funds and fraudulent activities of its President and CEO." Id. As the arbitrator recounted, Skadden's lead attorney testified that "Salus 'is a registered investment advisor, it has a fiduciary duty to the funds it advises and it's the subsidiary of [a] public company, we were concerned that if there was a really significant issue it would roll up and become an issue to the parent company where it would have to restate its financials if the information had been materially incorrect.' " Partial Award at 10. As the general counsel of HRG, Salus's public parent company, testified:
Skadden's mandate was to lead the internal investigation and get us at HRG comfortable and Salus comfortable that we discharged our duties as a registered investment advisor, as a publicly traded company, to our auditors, internal and external, to our board of directors and make a recommendation to us as to what, if anything, do we need to do to disclose this; are there other misrepresentations that need to be addressed.
Id.
The arbitrator acted within the scope of his authority in awarding the attorneys' fees incurred in the investigation following Moser's termination.
c. Vacatur on Grounds of Manifest Disregard of the Law
i. Disgorgement of Compensation
Moser next contends that the award requiring him to disgorge several months of compensation should be vacated as an improper application of the faithless servant doctrine. See ECF No. 15 at 17 ("The arbitrator's applying the faithless servant doctrine to order disgorgement of all compensation earned by Moser is far beyond anything permitted by law." (emphasis omitted) ).
Although styled as a challenge to the arbitrator's use of his powers pursuant to Section 10(a)(4) of the FAA, Moser's "real objection appears to be that the arbitrator[ ] committed an obvious legal error in" ordering Moser to disgorge his compensation. DiRussa, 121 F.3d at 824. While " Section 10(a)(4) was not intended to apply to such a situation," id., the Second Circuit has recognized an implied basis for vacatur where an award is in "manifest disregard" of the law. See T.Co Metals, 592 F.3d at 339. Awards are vacated on grounds of manifest disregard only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator[ ] is apparent." Duferco, 333 F.3d at 389 ; see also T.Co Metals, 592 F.3d at 339.[4] "Even *481 where an arbitrator's decision goes beyond contract interpretation," a federal court cannot vacate an arbitral award simply because it is " 'convinced that the arbitration panel made the wrong call on the law. On the contrary, the award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached.' " Phx. Bulk Carriers, Ltd. v. Am. Metals Trading, LLP, No. 10 Civ. 2963(NRB), 2013 WL 5863608, at *5 (S.D.N.Y. Oct. 31, 2013) (quoting Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004) ).
This Court finds far more than the "barely colorable justification" necessary to uphold the disgorgement award. Under New York's faithless servant doctrine, an employee who is "found to be faithless in his performance of services" to his employer "is generally liable for all compensation [received] from the date of the breach," regardless of whether the faithlessness caused damages. Carco Grp., Inc. v. Maconachy, 383 Fed.Appx. 73, 76 (2d Cir. 2010). Specifically, forfeiture is warranted if the employee's "misconduct and unfaithfulness ... substantially violates the contract of service," id. (quoting Turner v. Konwenhoven, 100 N.Y. 115, 120, 2 N.E. 637, 639 (1885) ), or if the employee "acts adversely to his employer in any part of [a] transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of [his] employment," id. (quoting Murray v. Beard, 102 N.Y. 505, 507, 7 N.E. 553, 554 (1886) ).
The arbitrator concluded that Moser's "manipulation" of roughly $100,000 in AVI invoices "had only one goal in mind, and that [wa]s to fraudulently transfer personal charges to Salus and to deceive Salus as to his intent." Partial Award at 23. The seriousness of the misconduct, the arbitrator noted, was reflected in Salus's "urgen[t]" decision to retain Skadden to investigate. See id. The award of disgorgement of Moser's compensation was not in manifest disregard of the faithless servant doctrine. See, e.g., Stanley v. Skowron, 989 F.Supp.2d 356, 361-63 (S.D.N.Y. 2013) (a single instance of insider trading followed by lying to regulators and failing to disclose the misconduct to the employer); Sansum v. Fioratti, 128 A.D.3d 420, 421, 8 N.Y.S.3d 311, 313 (1st Dep't 2015) (embezzlement of $100,000 over a two year period). While respondent claims that disgorgement was impermissible because Moser "performed his duties until he was terminated," ECF No. 15 at 17, "his purported exemplary performance of his duties when he was not stealing from plaintiff does not insulate him from the application of the faithless servant doctrine." City of Binghamton v. Whalen, 141 A.D.3d 145, 148, 32 N.Y.S.3d 727, 729 (3d Dep't 2016).
The arbitrator found that the "period of disloyalty" commenced at the end of May 2014, when Moser asked AVI to submit fraudulent invoices on his behalf. Partial Award at 23-24. Disgorgement of compensation received thereafter was warranted. See In re Marceca, 40 A.D.3d 318, 833 N.Y.S.2d 897 (1st Dep't 2007) ("[A]cts of faithlessness warrant disgorgement of all compensation paid after the first such act.").
ii. "Punitive" Damages Award
Finally, respondent contends that the magnitude of the award issued against him is so excessive as to be "improperly ... punitive," and thus subject to vacatur. See ECF No. 15 at 18.
Moser has mischaracterized the award. Pre-award interest pursuant to N.Y. C.P.L.R. § 5001 and disgorgement of compensation under the faithless servant doctrine are, as a matter of law, compensatory. See *482 Barkley v. United Homes, LLC, 848 F.Supp.2d 248, 270 (E.D.N.Y. 2012) ("The awards of punitive damages are unrelated to an award of pre-judgment interest. Punitive damages are intended to punish defendants for willful and knowing violations of the law and morally repugnant conduct. Pre-judgment interest, on the other hand, is intended to reward plaintiffs for the loss of enjoyment of property as a result of the fraud."), aff'd sub nom. Barkley v. Olympia Mortg. Co., 557 Fed.Appx. 22 (2d Cir. 2014) ; In re Blumenthal, 32 A.D.3d 767, 768, 822 N.Y.S.2d 27, 28 (1st Dep't 2006) (There is no merit to the "argument that disgorgement of compensation received by a faithless employee should be disallowed as tantamount to the imposition of punitive damages."). Similarly, neither award of attorneys' fees and costs may be considered punitive in nature; the awards compensated Salus for fees actually incurred because of Moser's misconduct, both as a Salus executive and as a litigant in the arbitration. See Synergy Gas Co. v. Sasso, 853 F.2d 59, 65-66 (2d Cir. 1988) (The award of attorneys' fees "can be considered compensatory because if Synergy had not acted in bad faith, then Brown would have been reinstated more than six years ago and the attorney's fees would not have been incurred.... [E]ven if an arbitrator expresses moral outrage at a party's behavior ... the award, even if it is very liberal, does not necessarily constitute the imposition of 'unlawful' punitive damages."); accord Lummus Glob. Amazonas, S.A. v. Aguaytia Energy del Peru, S.R. Ltda., 256 F.Supp.2d 594, 646 (S.D. Tex. 2002). Finally, Moser's share of the arbitration costs, as provided by the Employment and LLC Agreements, is not a damages award at all. Thus, none of the arbitration award can be properly characterized as punitive in nature.
Moser also suggests that the total award, $2.6 million, is "so disproportionate to the amount in controversy," Moser's "alleged misuse of $200,000 of corporate funds," that it "shocks one's consciousness [sic]." ECF No. 15 at 18.
There is no doubt that the total award of $2.6 million is quite large in comparison to the funds Moser misused. But each dollar is directly attributable to Moser's own misconduct. Moser's misstatement to auditors, and his failure to cooperate in the ensuing investigation, "not only mad[e] it necessary to engage Skadden to conduct the investigation, but dr[ove] up the costs of that investigation." ECF No. 24 at 29. Similarly, Moser's failure to reimburse Salus for the amount for which he admitted he was responsible "mad[e] it necessary for Salus to incur the costs of [a]rbitration, including the AAA fees, the [a]rbitrator's fees, and attorneys' fees." Id. And the disgorgement of salary "simply flowed from the [a]rbitrator's application of the faithless servant doctrine." Id. at 29-30. As Salus succinctly summarized:
Had Moser reacted differently when he was caught with his fingers in the cookie jar, he might have limited his exposure. But at every turn, he made things worse for himself. The [a]ward only holds him to account for his actions-no more, no less.
Id. at 30.
* * *
Having found each of Moser's arguments to be meritless, we decline to vacate the arbitration award. Furthermore, because Moser has failed to establish grounds for vacating, modifying, or correcting the arbitration award, we must grant Salus's petition to confirm the award. See 9 U.S.C. § 9.
*483 IV. Pre-Judgment and Post-Judgment Interest
The arbitrator awarded pre-award interest to Salus from December 30, 2016 to April 17, 2017 (the date of the award), at the rate of nine percent per annum. Final Award at 7-9. In this Court, Salus seeks post-award, pre-judgment interest at the same rate, running from April 17, 2017, until the date of entry of judgment. Moser does not address the issue of interest.
The decision whether to grant pre-judgment interest in arbitration confirmations is left to the district court. N.Y.C. Dist. Council of Carpenters Pension Fund v. E. Millenium Constr., Inc., No. 03 Civ. 5122(DAB), 2003 WL 22773355, at *3 (S.D.N.Y. Nov. 21, 2003). The Second Circuit has noted, however, that there is "a presumption in favor of prejudgment interest" in this context. Waterside Ocean Navigation Co. v. Int'l Navigation, Ltd., 737 F.2d 150, 154 (2d Cir. 1984). "Although the determination of the interest rate is also within the discretion of the trial court, the 'common practice among courts within the Second Circuit is to grant interest at a rate of nine percent per annum-which is the rate of prejudgment interest under New York State law, N.Y. C.P.L.R. §§ 5001 - 5004 -from the time of the award to the date of the judgment confirming the award.' " 1199/SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council Inc., No. 13 Civ. 2608(JGK), 2014 WL 840965, at *8 (S.D.N.Y. Mar. 4, 2014). Therefore, this Court orders pre-judgment interest, at the rate of nine percent per annum, from April 17, 2017 to the date on which judgment is entered.
Salus also seeks post-judgment interest. Post-judgment interest is mandatory, at a variable rate set by federal statute. 28 U.S.C. § 1961 ; see FCS Advisors, Inc. v. Fair Fin. Co., 605 F.3d 144 (2d Cir. 2010). Accordingly, Salus is entitled to post-judgment interest from the date of the entry of judgment to the date of payment at the statutory rate.
V. Attorneys' Fees Incurred in This Action
Finally, Salus seeks reasonable attorneys' fees incurred as the prevailing party in this action, as provided for in Section 16 of the Employment Agreement. Moser has not addressed the question of attorneys' fees incurred in this action.
If the parties are unable to resolve this issue within ten days of this Order, Salus may move for fees ten days thereafter. Moser's opposition shall be served within ten days after service of the motion, and any reply shall be served within five days after service of the opposition. Salus's submission shall be supported by contemporaneous records and shall be organized in a manner that facilitates evaluation. For example, all hours spent on a specific task shall be aggregated. Any challenge advanced by Moser shall be focused on a particular task and shall include a position on the extent to which the amount of fees sought for the task is excessive.
Conclusion
For the foregoing reasons, we deny Moser's motion to vacate the arbitration award, and grant Salus's petition to confirm the award.

The arbitrator refused to award the disgorgement of payment of the collateralized loan obligation because, "[h]owever odorous Moser's behavior," Salus's CFO had approved the transaction. Partial Award at 17-18.

Moser was also required to pay, pursuant to the Employment and LLC Agreements, his share of the expenses of the arbitration itself, for a total of $23,560.41. Final Award at 9.

Moser agreed, pursuant to Section 18(a) of the Employment Agreement, that the FAA would apply in any dispute regarding arbitration awards. Yet he now suggests that, because the petition was initially filed in New York State Supreme Court pursuant to N.Y. C.P.L.R. § 7510, the FAA is inapplicable. Moser's argument is unpersuasive: the FAA applies so long as (1) there is "federal subject matter jurisdiction, i.e., diversity jurisdiction," and (2) "the contract calling for arbitration [evidences] a transaction involving interstate commerce." In re Ballabon, No. 15cv5016(DLC), 2015 WL 6965162, at *4 (S.D.N.Y. Nov. 10, 2015) (quoting Barbier v. Shearson Lehman Hutton Inc., 948 F.2d 117, 120 (2d Cir. 1991) ); accord Bisnoff v. King, 154 F.Supp.2d 630, 635-36 (S.D.N.Y. 2001) ; cf. McQueen-Starling v. UnitedHealth Grp., Inc., 654 F.Supp.2d 154 (S.D.N.Y. 2009) (applying the FAA to petition to vacate initially brought in state court pursuant to C.P.L.R. § 7511 ); Hakala v. Deutsche Bank AG, No. 01 Civ. 3366(MGC), 2004 WL 1057788, at *1-2 (S.D.N.Y. May 11, 2004) (same). Diversity jurisdiction exists as the parties are citizens of different states and the amount in controversy, $2.6 million, far exceeds the jurisdictional threshold. See 28 U.S.C. § 1332. Further, Moser does not contest that the LLC Agreement or his Employment Agreement evidence "transaction[s] involving interstate commerce."

Two recent decisions of the Supreme Court cast some doubt on the ongoing reach of the manifest disregard doctrine. See Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 584-91, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) (holding that sections 10 and 11 of the FAA specify the exclusive grounds for vacating, modifying, or correcting an arbitration award); see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 672 n.3, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) ("We do not decide whether 'manifest disregard' survives our decision in [Hall Street Associates ] as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10."). Nevertheless, the Second Circuit has concluded that the doctrine has survived Hall Street Associates, see T.Co Metals, 592 F.3d at 339-40, and therefore we address respondent's argument that the compensation disgorgement award should be vacated on that basis.